**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:13-cr-00392-LJO-SKO-4 |
| **Plaintiff-Respondent,** | |
| v. | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |
| **EDUARDO ORTEGA CHAVEZ,** | (ECF Nos. 181, 187, 192, 195) |
| **Defendant-Petitioner.** | |

Eduardo Ortega Chavez ("Petitioner" or "Chavez") brings a 28 U.S.C. § 2255 motion ("§ 2255 motion") to vacate, set aside, or correct his sentence. ECF No. 181. Chavez pleaded guilty to one count of cultivation of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) pursuant to a plea agreement. ECF No. 165. Petitioner now challenges his conviction on the ground that his counsel was ineffective by allegedly misadvising him regarding the immigration consequences of his guilty plea and that his plea therefore was not knowingly and voluntarily made. For the reasons discussed below, the Court DENIES the petition.

## I. BACKGROUND

Chavez is a 35-year-old native and citizen of Mexico who has resided in the United States since age 10. ECF No. 181 at 4. He became a legal permanent resident ("LPR") of the United States in December 1998 at age 16. *Id.* Chavez's entire family resides in the United States legally. *Id.* Chavez and four others were named in a superseding indictment filed on January 16, 2014. ECF No. 16. Chavez was named in count one which alleged a violation of 21 U.S.C. §§

846, 841(a)(1) and (b)(1)(B) – conspiracy to manufacture, distribute, and possess with the intent to distribute marijuana – 100 or more plants – which carries a five year mandatory minimum. *Id.* Chavez was arrested in February of 2016. ECF No. 145.

On February 13, 2017, Chavez pleaded guilty to one count of cultivation of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) – 50 or more plants. ECF Nos. 166-167. There was a plea agreement on file at the time of sentencing. ECF No. 165. The plea agreement, in part, provided the following:

> The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Indeed, because defendant is pleading guilty to drug charges, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status, Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

ECF No. 165 at 9, VII.D. Additionally, the Petitioner's plea agreement contained a complete waiver of Chavez's appellate rights, including his right to appeal his guilty plea, conviction, and sentence, as well as a waiver of his collateral attack rights under § 2255. *Id.* at 8, VII.B.

During the February 13, 2017 plea colloquy, the Court asked Chavez to identify the signatures on the plea agreement and he did so. ECF No. 176 at 3-4. Chavez affirmed that he had the chance to review the entire plea agreement with his lawyer and that he had no further questions concerning the agreement. *Id.* Chavez affirmed that he understood that he was waiving his right to appeal. *Id.* at 5. The Court also stated "I don't know if immigration is an issue in your life, but if it is, this would be grounds for deportation. Do you understand that?" and Chavez responded "Yes." *Id.* at 5:4-7.

A Presentence Investigation Report ("PSR") was submitted on April 24, 2017 and provided a sentencing guideline imprisonment range of 12 to 18 months based on an offense level of 13 and a criminal history category of I. ECF No. 171. On May 15, 2017, Chavez was sentenced to 12 months in custody and 36 months supervised release.[1]

On October 10, 2017, Petitioner filed his § 2255 motion to correct his sentence, which included his declaration. ECF No. 181. The Court requested a response from the United States and an opposition to the § 2255 motion was filed on January 25, 2018 which included a declaration from Chavez's former counsel, Mr. Richard A. Beshwate ("Beshwate"). ECF No. 190. Chavez replied on February 22, 2018. ECF No. 192. As a result of the factual dispute concerning what Chavez was told by counsel Beshwate, the Court held an evidentiary hearing on June 13, 2018. ECF Nos. 193-195.[2]

## II. **STANDARD OF REVIEW**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Section 2255 provides four grounds upon which a sentencing court may grant relief to a petitioning in-custody defendant:

---

[1] After being released from custody in May 2017, Chavez was apparently taken into Immigration and Customs Enforcement ("ICE") custody and faced removal proceedings under the Immigration and Nationality Act, § 237(a)(2)(A)(iii) for being convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B), an offense relating to the illicit tracking in a controlled substance. ECF No. 181 at 4, 6-7, Ex. E. Chavez is still subject to supervised release and thus he is "in custody" for the purposes of § 2255. *See United States v. Monreal*, 301 F.3d 1127, 1132 (9th Cir. 2002) (a defendant who has "not served his term of supervised release" is "in custody" for purposes of § 2255); *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

[2] Chavez, who since his release from custody has been deported to Mexico, requested to appear by video teleconference. Due to a disconnection during the course of the hearing, Chavez was present and testified by telephone. Beshwate testified in person. Counsel Alex Lubarsky appeared on behalf of Chavez and Ms. Laurel Montoya appeared on behalf of the government. *See* ECF No. 195. Chavez requested and consented to handling the hearing in this fashion.

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). Generally, only a narrow range of claims fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255) (emphasis in original). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations omitted), *cert. denied*, 520 U.S. 1269 (1997). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989). Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.* at 1159.

### III. DISCUSSION

Petitioner asserts that his Fifth and Sixth Amendment constitutional rights have been violated as a result of receiving ineffective assistance of counsel and the Court's inadequate advisement during the plea colloquy. ECF No. 181 at 2. Chavez requests that the Court permit him to withdraw his plea, vacate his conviction, and go to trial. *Id.* Petitioner maintains that his court-appointed counsel misadvised him regarding the immigration consequences of his plea and he entered his guilty plea "solely as a result of counsel's faulty advice that the plea was a 'good

4

1 deal' and would not result in immigration consequences because of his status as a legal
2 permanent resident." *Id.* Petitioner presents three arguments in his § 2255 motion: (1) ineffective
3 assistance of counsel for failing to advise him during his plea negotiations of the automatic and
4 mandatory deportation consequences of his guilty plea for a drug related offense under 21 U.S.C.
5 841(a)(1) and (b)(1)(C); (2) due process violation during the plea colloquy on February 13, 2017
6 for not giving the appropriate advisement on deportation; and (3) that his waiver to file a § 2255
7 motion in the plea agreement was not knowing and voluntary due to ineffective assistance of
8 counsel. *Id.* at 2-3.

### A. <u>Ineffective Assistance Of Counsel Claim</u>

Chavez contends his counsel was ineffective for not informing him about the deportation consequences of his guilty plea. Chavez states that deportation was the determinative issue for him in this case and that he told his counsel as early as their first meeting that his first priority was to avoid deportation. ECF No. 181 at 5. Nevertheless, he states that his counsel recommended accepting a plea agreement with severe and almost certain immigration consequences. *Id.* Chavez's declaration that was submitted along with his § 2255 motion states that he asked his attorney if the plea agreement said anything about immigration and his attorney told him that it said nothing about immigration and further assured him that his guilty plea would not lead to deportation because he was protected by his LPR status. ECF No. 181 at 5-6, Ex. A. He states that his attorney read the plea agreement to him and did not mention deportation. *Id.* Chavez further contends that when the Court advised him of potential immigration consequences during his plea colloquy, he thought the statement was not applicable to him based on his LPR status and his attorney's advice that he had no immigration issues. *Id.* Chavez argues he would have gone to trial had he been properly advised of the immigration consequences and as such he was prejudiced by the ineffective assistance of counsel. ECF No. 181 at 10-11. He further argues that he can establish prejudice because had he known of the deportation consequences he could have pled to a disposition that would not have adverse immigration consequences, *i.e.* a plea that would have enabled him to apply for LPR cancellation of removal or asylum and withholding of

removal. ECF No. 181 at 12-13. No such offer was made by the United States Attorney's office, nor was there an indication such offer would ever be offered.

The government opposed Chavez's motion. ECF No. 190. The government's opposition submitted a declaration from Chavez's court-appointed attorney, counsel Beshwate, and contends that Chavez was advised of the immigration consequences stemming from the charges in the superseding indictment. ECF No. 190 at 2; Ex. 1. The government states that it tendered a plea deal offering that the Defendant plead guilty to a superseding information alleging conspiracy to distribute, possess with the intent to distribute, and manufacture marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), 50 or more plants, and no mandatory minimum. *Id.*[3] The government contends that counsel Beshwate advised Chavez that he would be deported as a result of the plea to a conspiracy charge and as a result Chavez specifically asked Beshwate to negotiate a plea to a cultivation charge because Defendant felt his chances with immigration proceedings would be better. *Id.* (This is a clear indication that the Petitioner understood that the issue of immigration was present and real). The government submits that Beshwate, at Defendant's direction, negotiated a plea to cultivation of marijuana charge, instead of the conspiracy charge, even though Beshwate advised Chavez that the immigration consequences would be the same and he would be deported. *Id.* In contradiction of Chavez's declaration, Beshwate submits that he did not tell Chavez or his family that he would not be subject to deportation and further submits that he went over each of the terms of the plea agreement with Chavez, including and emphasizing the paragraph containing the virtually certain deportation consequences. *Id.* Government contends that Chavez was advised of the virtual certainty of his deportation multiple times and his motion should be denied. ECF No. 190 at 4-5.

### 1. Legal Standard Governing Ineffective Assistance Of Counsel Claims

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are

---

[3] Chavez was originally charged with one count alleging the violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), which involves a 100 or more plants and carries a mandatory minimum of five-years. ECF No. 190 at 1; *see also* ECF Nos. 16, 166.

6

analyzed under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ross v. Stewart,* 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 694. "Deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland,* 466 U.S. at 688). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

The Supreme Court has held that "the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). In the context of guilty pleas, the first prong of the *Strickland* test echoes the standard of attorney competence set forth *McMann. Id.* at 58-59. "Where . . . a Petitioner is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *United States v. Lopez*, 182 F.3d 929 (9th Cir. 1999) (quoting *McMann*, 397 U.S. at 771). "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697. The Court is also not required to address both prongs if the defendant makes an insufficient showing on one. *Id.*

The Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 359 (2010) addressed what constitutes deficient performance under the *Strickland* test with respect to advising a defendant on the deportation consequences of pleading guilty. To provide effective assistance of counsel, "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374. The

7

Court held that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id.* at 369.[4] Accordingly, "where the law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty." *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (quoting *Padilla*, 559 U.S. at 368-69); *see also United States v. Bonilla,* 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original). The Supreme Court in *Lee v. United States*, 137 S. Ct. 1958, 1963 (2017), then addressed the prejudice prong of *Strickland* with respect to not being told of the mandatory deportation consequences of a plea agreement.[5] The Court noted that "deportation is always 'a particularly severe penalty,' and we have 'recognized that preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Lee*, 137 S. Ct. at 1968 (quoting *Padilla*, 559 U.S. at 365). In this regard, the Court found that defendant did not have to demonstrate that the outcome at trial would have been different in order to establish prejudice under *Strickland* but that even the smallest chance of a different outcome, when faced with deportation, was enough to show

---

[4] In *Padilla*, the defendant, a lawful permanent resident, pleaded guilty to drug charges involving the transportation of a large amount of marijuana in his tractor trailer. The Court noted "Padilla's crime, like virtually every drug offense except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i)." *Padilla*, 559 U.S. at 359 n. 1 (2010).

[5] In *Lee*, the government conceded that counsel's performance was deficient for advising his client, a lawful permanent resident, that there would be no deportation consequences if he pleaded guilty when in fact the guilty plea to possession of ecstasy with intent to distribute made Lee subject to mandatory deportation under the Immigration and Nationality Act. 137 S. Ct. at 1962-63 (citing 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii)). The plea agreement did not have a specific warning about deportation and his attorney advised him that if deportation was not in the plea agreement he could not be deported. *Id.* at 1963. During the plea colloquy when the judge warned that the plea could result in deportation, Lee stated he did not understand and consulted with his attorney who told him it was a "standard warning" and Lee proceeded. *Id.* at 1968.

that defendant demonstrated that but for his counsel's errors of advising him of the incorrect deportation consequences, he would have insisted on going to trial. *Id.* at 1966, 1968-9.[6]

### 2. The Plea Agreement's Advisement And The Plea Colloquy's Impact On The Ineffective Assistance Of Counsel Claim

In *Rodriguez-Vega*, the Ninth Circuit addressed similar circumstances to those presented here and specifically held that where a defendant's conviction of a removable offense renders removal "practically inevitable," as here, counsel is required to advise his client that the "conviction rendered [his] *removal virtually certain, or words to that effect*"; advising of a possibility is not sufficient. *Rodriguez-Vega*, 797 F.3d at 786, 790 (emphasis added) (internal citation omitted).[7] The Ninth Circuit further held that "the court's advisement and the statements in the plea agreement that [defendant] faced the possibility of removal did not purge prejudice, if for no other reason than that they did not give her adequate notice regarding the actual consequences of her plea. The plea agreement and plea colloquy, like the advice of her lawyer, each notified Rodriguez-Vega only that there existed a possibility of removal, when in fact her removal was virtually certain." *Id.*

Here, in contrast to *Rodriguez-Vega*, the plea agreement specifically advises that "it is virtually certain that defendant will be removed," that as a result of pleading guilty to drug

---

[6] In the immigration context, "[a] petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea [i.e. prejudice] by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense." *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015). While Petitioner's § 2255 motion submits this argument, he does not identify cases to make this showing. ECF No. 181 at 12-13. Chavez cites cases which are examples of controlled substance offenses that are not classified as aggravated felonies, however these cases are not examples of other defendants that were charged with the substantially similar offenses to Chavez that were then given the opportunity to plead guilty to a non-removable, lesser offense. *Id.* Chavez also did not offer any evidence that such a varied offer was available from the government, either in the plea negotiations with the government or via an alternatively offered plea agreement. Because the Court finds that counsel's performance was not deficient with respect to the first prong of *Strickland*, the Court does not otherwise substantively address the prejudice prong.

[7] The terms "removal" and "deportation" are often used interchangeably. *Rodriguez-Vega*, 797 F.3d at 786 n. 5.

charges "removal is presumptively mandatory" but that Defendant "nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States." ECF No. 165 at 9, VII.D. Additionally, during the plea colloquy Chavez affirmed that he had reviewed that entire plea agreement with his attorney and had no questions. ECF No. 176 at 3-4. Chavez's on-the-record statements are given substantial weight and "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Chavez's after-the-fact assertion that his lawyer did not provide him with or read him the entire plea agreement or mention immigration consequences are simply not credible, as discussed below. *See Lee*, 137 S. Ct. at 1967 (noting "the strong societal interest in finality has special force with respect to convictions based on guilty pleas. Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies") (internal citation and quotations omitted).

Here, Chavez's ineffective assistance claim rests entirely on a credibility determination. Case law is clear that counsel was required to advise Chavez of the virtually certain deportation consequences of his guilty plea. Under Beshwate's version of events, he did so and under Chavez's version, he did not. The viability of Chavez's ineffective assistance of counsel claim rests on which version of events is accepted as true. The plea agreement's advisement on mandatory deportation and Chavez's in-court statements during the plea colloquy supports to Beshwate's version of events. The Court further discusses its credibility determinations below.

### 3. The Court's Findings After The Evidentiary Hearing

The court held an evidentiary hearing at which Beshwate and Chavez both testified to their contradicting recollections regarding how Beshwate advised Chavez about the plea and its effect on Chavez's immigration status. ECF No. 195. Beshwate testified that he informed Chavez that he would most certainly be deported. Beshwate also testified that he read Chavez the entirety of the 10-page plea agreement that he ultimately signed. Chavez testified that Beshwate never advised him that he would be deported if he signed the plea agreement, and that he only provided him with two pages to review.

After holding an evidentiary hearing, the Court finds that Chavez was properly advised of the mandatory deportation consequences of his guilty plea. The Court finds that Beshwate's testimony is credible as to what he advised Chavez. Namely, Beshwate unequivocally testified several times that he told Chavez that he would be deported in a manner that was certain and direct. Defendant conceded during his testimony at the hearing that he requested that Beshwate pursue a cultivation charge instead of a conspiracy charge because he was advised by other inmates at the jail that a cultivation charge would allow him to avoid deportation. Beshwate further testified that he told Chavez that he would be deported regardless of whether he pled guilty to the government's original offer of a conspiracy charge or the cultivation charge that Chavez specifically requested Beshwate negotiate with the government after the original offer. Beshwate unequivocally testified that he reviewed the entire plea agreement with Chavez, including the term that advised Petitioner of the virtually certain removal consequences of his guilty plea. Correspondingly, the Court finds that Chavez's testimony that he was never advised that he would be deported and that Beshwate did not mention anything about deportation consequences when reading the plea agreement to him is not credible. It is not believable that Beshwate did not address the issue of immigration with his client when, by Defendant's own testimony, he raised the issue himself a number of times and specifically requested that Beshwate negotiate a plea to a cultivation charge because he believed it would be better for immigration purposes.

Defendant is understandably motivated by his desire to be with his family and there is no question that deportation was a primary focus and concern for him. Unfortunately, it appears that Defendant received ill advice from "jail house attorneys," who advised him that pleading guilty to a cultivation charge would have better chances in the immigration context. It appears clear that Chavez heeded this ill advice in conjunction with an understandable desire to avoid a five year mandatory minimum. Petitioner's miscalculation does not transform Beshwate's warnings about the deportation consequences into deficient advisements. The Court finds that Beshwate clearly advised Chavez that he would be deported as a result of his plea. If Beshwate was clear about his advice, and the Court finds that he was, Petitioner's subjective belief is both factually

11

unreasonable and legally irrelevant. *See, e.g.*, *United States v. Nuwintore*, No. 2:07-CR-0139 WBS AC, 2015 WL 1119627, at *12 (E.D. Cal. Mar. 11, 2015), *report and recommendation adopted*, No. 2:07-CR-0139 WBS AC, 2015 WL 5175020 (E.D. Cal. Sept. 2, 2015), *aff'd*, 696 F. App'x 178 (9th Cir. 2017) ("Petitioner's subjective confusion about the practical implications of being deportable but not returnable to his home country does not make counsel's advice unreasonable.") (denying writ of error coram nobis).

Additionally, Chavez testified that Beshwate only read and showed him two pages of a plea agreement. In response to the Court's questioning during the evidentiary hearing, Chavez admitted that he was dishonest with the Court when the Court asked, during the plea colloquy, if he had reviewed the *entire* plea agreement (as the Court showed Defendant a ten page plea agreement with his signature on it). ECF No. 176 at 3. The Court does not find his testimony credible concerning only receiving and being read a two page plea agreement. Nor is it believable that Beshwate told Chavez there were no immigration consequences to his plea when the plea agreement specifically indicated the virtual certainty of such consequences.

After making these credibility determinations, it follows that Beshwate's performance was not deficient because he advised Chavez directly and unequivocally that he would be deported as a result of his guilty plea. *See Rodriguez-Vega*, 797 F.3d at 786. Accordingly, Mr. Chavez has not satisfied the first prong of the *Strickland* test and cannot demonstrate that he received ineffective assistance of counsel. The Court declines to address the prejudice prong of *Strickland*. *Strickland,* 466 U.S. at 697.

Accordingly, Chavez's § 2255 motion is DENIED with regard to his claim for ineffective assistance of counsel.

### B. Fifth Amendment Due Process Violation During Plea Colloquy

Chavez also states that his plea was not knowing and voluntary, in violation of his Fifth Amendment due process rights, because during the plea colloquy on February 13, 2017, the Court did not use the exact language provided by Federal Rules of Criminal Procedure

11(b)(1)(O) concerning deportation for non-U.S. Citizens. ECF No. 181 at 14-15.[8] A review of the plea colloquy transcript shows that the requirements of Rule 11 were met and the required advisements were made. ECF No. 176. In particular, the following exchange occurred between the Court and Chavez during the plea colloquy:

> Q. Do you understand this has to be your decision. You certainly can consult with your lawyer?
> A. Yes.
> Q. But he can't make the decision for you. You have to make it?
> A. Yeah. I make it myself.
> Q. All right. Is anybody forcing you or threatening you in any way to get you to do this?
> A. No.
> Q. If you wanted to instead go to trial, all you would have to do is tell us; do you understand that?
> A. Yeah.
> Q. And if you told me that you wanted to go to trial, we would make sure that this case went to trial, as set, on March 7th, in a timely fashion under the law. You would be there. Your lawyer would be there for you. The government would have the burden of proving the case against you. She would attempt to meet that burden by bringing in witnesses and evidence. You would watch that happen. You would watch people testify against you, and your lawyer would ask questions or cross-examine them for you. If you wanted to testify, you could, but if you decided not to, nobody would use it against you. You could bring in witnesses and evidence. We would help you get that here by the subpoena power of the Court. And your trial would be open to the public, just like today's hearing is open to the public. Do you understand those trial rights?
> A. Yes.
> Q. Do you wish to give them up and plead guilty?
> A. Yeah.
> Q. Do you have any questions at all about what you are doing here at this moment?
> A. No.

ECF No. 176 at 5-6. Additionally, as highlighted previously, the Court stated "I don't know if immigration is an issue in your life, but if it is, this would be grounds for deportation. Do you understand that?" and Chavez responded "Yes." *Id.* at 5:4-7. Chavez states that because he was misadvised that his offense could only be damaging to those who do not have lawful status, he believed he did not have immigration issues, and he believed the Court was confirming his

---

[8] The advisement as provided in Rule 11(b)(1)(O) is: "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Fed. R. Crim. P. 11.

understanding in his plea colloquy. This is not a valid basis for § 2255 relief and Petitioner does not offer any legal authority for this argument. To the extent Petitioner claims that the Court did not use the exact words provided in Federal Rule of Criminal Procedure 11(b)(1)(O), there is no legal basis for the argument and Defendant cites no legal authority to support the argument. *See, e.g.*, *United States v. Youpee*, 419 F.2d 1340, 1344 (9th Cir. 1969) ("Questions need not be framed in the exact language of [Rule 11] so long as the judge uses rational means to determine the defendant's understanding of the charges against him and the consequences of his plea."); *United States v. Rojas-Vivar*, 424 F. App'x 665, 667 (9th Cir. 2011) (deviations from exact language of Rule 11 was not plain error where court in essence explained to defendant his rights). The Court's advisements were sufficient and left intact Petitioner's Fifth Amendment rights. Moreover, Petitioner's contention that he believed that he did not have immigration issues because of his status as a LPR is not credible in light of his testimony that immigration was his principal concern when it came to the handling of his criminal case, and it was specifically for this reason that he acted upon the jail house legal suggestion to plead to one offense over another.

Accordingly, Chavez's § 2255 motion is DENIED on this ground.

### C. Petitioner's Waiver Of His Right To Collateral Attack Was Invalid

Petitioner lastly contends because he entered the plea agreement on the deficient legal advice of counsel, his waiver of the right to petition for relief under § 2255 in the plea agreement was not knowing and voluntary. To be clear, this argument does not present a separate ground for the § 2255 motion. Petitioner instead argues that the waiver in the plea agreement should not preclude the Court from considering his ineffective assistance of counsel claims on the § 2255 motion despite the waiver of his right to file such a motion.

Waivers of the right to appeal cannot bar ineffective assistance of counsel claims associated with the negotiation of plea agreements. *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005). Here, the Court has addressed Chavez's claim that he received ineffective

assistance of counsel and found it lacked merit. Chavez presents no other challenges concerning the waiver being unknowing or involuntary.[9]

Accordingly, there is no basis to find that the waiver was involuntary and/or ineffective.

### D. Certificate of Appealability

A Petitioner cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a Petitioner must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. The Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court further finds that reasonable jurists would

---

[9] The right to collaterally attack one's conviction and sentence is granted by statute. A knowing and voluntary waiver of such statutory right is enforceable. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011) (citation omitted). A reviewing court "looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). Here, Petitioner's plea agreement plainly states that he agreed to waive his rights to appeal his plea, conviction and sentence, including in any post-conviction proceeding under 28 U.S.C. § 2255. ECF No. 165 at 8, VII.B. Furthermore, during the plea colloquy the Court asked Chavez if he had reviewed the entire plea agreement with his counsel and if he understood that he was waiving his right to appeal. Chavez responded affirmatively to both questions. ECF No. 176 at 3-5. The Court also inquired whether Chavez had any questions multiple times. *Id.* The procedures were sufficient to demonstrate a knowing and voluntary waiver. *See*, *e.g.*, *Baramdyka*, 95 F.3d at 844.

not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack*, 529 U.S. at 483. Accordingly, the Court DECLINES to issue a certificate of appealability.

### IV. **CONCLUSION AND ORDER**

For the reason discussed above, this Court DENIES Petitioner's § 2255 motion to vacate, set aside, or correct sentence. The Court also DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **June 15, 2018**        **/s/ Lawrence J. O'Neill**
                                UNITED STATES CHIEF DISTRICT JUDGE